## REID et al. v. OWENS et al.

No. 5758.   Decided June 10, 1937.   (69 P. [2d] 265.)

*Thomas & Thomas,* of Salt Lake City, for appellants.

*Gardner, Latimer & Evans,* of Salt Lake City, for respondents.

*Ingebretsen, Ray, Rawlins & Christensen* and *Joseph Jones,* all of Salt Lake City, for cross-complainants and respondent.

EVANS, District Judge.

This is an appeal from a judgment entered upon a directed verdict in favor of the defendant W. F. Owens, and involves the question as to the effect to be given to certain extrajudicial admissions relied upon by appellants to establish his liability.

The plaintiffs sued to recover damages for the alleged wrongful death of their father, Clair G. Reid, who was struck and killed by an automobile owned by the defendant W. F. Owens, but which, at the time of the accident, was being driven by the defendant George Owens, his seventeen year old son. It is alleged, and at the trial evidence was offered tending to prove, that George Owens was negligent in the operation of the car at the time of the accident, and that as a result of such negligence the deceased father of the minor plaintiffs met his death. Upon this issue the jury failed to agree and the court declared a mistrial. The cause is still pending, except as to the defendant W. F. Owens, in whose favor the court granted a motion for a directed verdict upon the ground that there was no evidence tending to show that the defendant George Owens was an habitually careless driver, or any substantial evidence from which the jury could find that the defendant W. F. Owens knew or should have known that the defendant George Owens was an habitually careless driver.

An examination of the record discloses that there was no independent evidence offered by plaintiffs in support of the allegations that George Owens was an incompetent, careless, unsafe, and reckless driver, habitually driving the automobile at a high and dangerous rate of speed. The only evidence offered on behalf of plaintiffs, and which it is contended should have required the submission of the question to the jury, is found in the testimony of Mary Ethel Reid and Bryan

Reid. Mary Ethel Reid testified that after the death of her husband, the defendant W. F. Owens came to her home, and in the course of a conversation said: "My boy is like all boys; he drives too fast and is careless. We have taken out five thousand dollars of insurance and we will do all we can to help you get that." Bryan Reid, a brother of the deceased, testified that on that occasion, W. F. Owens said that the boy was driving too fast; that he was not a careful driver and it worried them considerably, and for that reason he took out protection for him.

It is contended by the plaintiff that this evidence constituted not only knowledge on the part of the father of the son's habits, but that it also made out a prima facie case as to the careless habits of the son. It is contended by the defendant that the evidence of the alleged admissions of W. F. Owens bears only on the question of his knowledge and not on the independent fact of the son's habitual carelessness in driving.

At the close of plaintiff's case, defendants moved for a nonsuit, which motion, however, was denied, indicating that the court at this stage of the proceedings adopted the plaintiffs' theory. The granting of a directed verdict constitutes a rejection of that theory.

The complaint alleged that George Owens was a careless and reckless driver and that his habits in such respect were well known to the defendant W. F. Owens, notwithstanding which he permitted the boy to drive the car. These allegations were denied. If, however, the answer had admitted the alleged statements attributed to the defendant W. F. Owens, no proof would need be offered as to that issue. Of if, notwithstanding the denials in the answer, the defendant W. F. Owens had made such admissions in open court, the effect would be the same. Here the alleged admissions being extrajudicial, require proof, and the fact as to whether or not the admission was made becomes an issue to be submitted to the jury.

If the father had reason to believe that his son was a careless driver, from observation of his habits, or otherwise, it would be his duty to deny the son the use of the car. The son's reputation is not necessarily the only source of knowledge as to his habits of driving. It is not so much a question as to what others may believe in that respect as to what the father himself may know as to the fact or as to the son's reputation.

"When an admission is clearly proved and shown to have been made with deliberation, it is not necessarily weak evidence, nor does it require corroboration. On the contrary, when admissions are so proved, they may have great inherent force as evidence. To the extent of the subject matter of the admission it makes out a prima facie case, and dispenses with other proof of the fact admitted, until rebutted, and a finding resting solely upon an extra-judicial admission is not, for that reason, unsupported by substantial evidence." 3 Jones' Comm. on Evid. § 1072.

"While a litigant in a cause may not necessarily be concluded by his extra judicial admission of facts, yet whatever is so voluntarily admitted by him against himself may reasonably be taken to be true; and he ordinarily may not complain if it is treated as true." *Midgley* v. *Campbell Building Co.*, 38 Utah 293, 112 P. 820, 822.

In the case of *Peterson* v. *Richards*, 73 Utah 59, 272 P. 229, 233, testimony was offered on behalf of plaintiff to the effect that the defendant had stated:

"I do admit that we injured her hand in the operating room, but as far as money is concerned, I do not care at all about the money because the insurance company has to take care of that, but it is the publicity part of it that I don't like."

Commenting upon the effect of this testimony, the court said:

"Parts of these conversations were admitted and parts denied by the defendant in his testimony. He, however, denied making any admission or statement that plaintiff's hand or fingers were injured on the operating table or in the operating room, and testified that what he admitted was that plaintiff's fingers were in some manner injured in the hospital, but not on or about the operating table or in the operating room; that instead of saying he did not care anything about the

money part, or that the insurance company would take care of that, he said he was not worrying about any lawsuit because he was not responsible for the injury. * * *

"Looking at the facts and circumstances as adduced by the plaintiff, together with her testimony and that of her husband as to the admissions of the defendant as testified to by them, the weight or credibility of which we may not determine, we think there was sufficient evidence to require the case to be submitted to the jury. True, the defendant denied the admissions, and he and his witnesses attending the operation gave rather direct and positive evidence that plaintiff's fingers were not injured on or about the operating table or in the operating room. However persuasive such evidence may be regarded as a matter of fact, yet it cannot be said that it, as a matter of law, so dissipated that of the plaintiff's as to leave not anything for the jury to determine, especially in view of the testimony as to the defendant's admissions, which, if believed by the jury, were themselves sufficient to justify a finding that plaintiff's fingers were injured through manipulations or adjustments of the table."

To the same effect is the case of *Ward* v. *Ares,* 29 N. M. 418, 223 P. 766, 769, in which the court said:

"Is the court's finding that the appellant Paul advised and co-operated with the appellant Mable in writing the libelous letter supported by substantial evidence? The only evidence offered in support of this finding was of an extra judicial admission, said to have been made by Paul in a conversation with the appellee some three years before the trial, which two witnesses inside a house, some 40 or 50 feet distant, say they overheard. This appellant not only strenuously denies the making of any such admission, but also any knowledge of the writing of the letter and its contents. Be that as it may, we are here concerned only with the sufficiency of the evidence supporting the finding, even though it be disputed. Counsel argues that such an extra-judicial admission is not sufficient evidence, but cites no authority in support of the contention. An examination of a large number of cases, however, discloses that the courts with uniformity have observed that all evidence of oral admissions should be received with great caution and accorded slight weight in the decision of a question of fact to which it relates. * * * But we have found no court which has gone so far as to say that such evidence, standing alone, solely because of its general character as an admission, is insufficient to support a verdict or finding of fact. The weakness of such evidence lies, not so much in its character as an admission, but rather in the general unreliability of proof of the admission, due to the fact that such proof

is subject to imperfection and mistake and the ease with which it may be fabricated without serious danger of detection. In this case the admission, of which testimony was given, was that Paul knew what Mabel wrote, that he told her to write it, and that they did what they did for spite, and the testimony of the witnesses who claimed to have heard the admission is uniform as to its contents and character—we were about to say suspiciously uniform, but are reminded that the question of credibility was one for the trial court. We cannot say from the record that the trial court accorded this evidence any greater weight than that to which the law holds it to be entitled, even though we might have decided otherwise were we authorized to pass upon the weight of the evidence and the credibility of the witness, and therefore cannot say that the finding of the court upon which the liability of the defendant Paul is based is unsupported by substantial evidence."

The defendant W. F. Owens contends that the admission goes only to his knowledge of the fact and that his knowledge is insufficient to charge him with liability without independent proof of the existence of the fact, which could be proved only by the evidence of general reputation; in other words, that he had knowledge of a fact which was not otherwise shown to exist. We cannot concur in this view. One's habits are not necessarily known to the general public, but may be known to members of his family or to his intimate associates.

The judgment of the district court is reversed, and the cause remanded, with instructions to grant a new trial, with costs to appellants.

EPHRAIM HANSON and LARSON, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.

FOLLAND, Chief Justice (concurring).

I concur with some hesitancy. This court seems committed to the doctrine announced. However, the courts and text-writers look with suspicion upon testimony of admissions of the character herein relied upon and say they should be received with caution. *Jones* v. *Harris*, 122 Wash. 69, 210 P. 22. This attitude is because of the opportunity for inaccuracies

in hearing, understanding, remembering, and repeating oral statements made by others, let alone the danger of such statements or conversations being colored to suit a particular purpose when testified to by parties to the suit or those closely related to or interested with such parties. The claimed admissions were denied. This, of course, makes an issue for the jury, whose duty it is to determine wherein the truth lies. Even though we hold the evidence sufficient to make a prima facie case, the defendant would, on request, be entitled to an instruction to the jury that such testimony be regarded with caution. 22 C. J. 291.

MOFFAT, Justice (concurring).

I concur in the opinion of District Judge EVANS and also in the concurring opinion of Mr. Chief Justice FOLLAND.