FRANCESCO J. GARDELLA *vs.* MADDALENA GARDELLA.

APRIL 18, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This is a divorce proceeding, which is before us on bills of exceptions by both the petitioner and the respondent. It is also before us on petitioner's appeal from a decree granting respondent's motion for additional counsel fees. The petitioner's bill of exceptions sets forth numerous exceptions to rulings admitting or excluding evidence, and an exception to the decision of the trial justice denying and dismissing his petition. The respondent's only exception is to the decision of said justice denying and dismissing her motion in the nature of a cross-petition, hereafter called a cross-petition.

The voluminous transcript in this case has been examined by us. It is replete with conflicting testimony, and sets out in great detail many incidents in the course of the married life of these parties. A summary of the evidence that we deem sufficient for our purposes may be divided into two periods, the first extending from May 1927 to March 9, 1932,

and the second from the last-mentioned date to May 18, 1937, when the instant case was commenced.

The petitioner, who formerly ran a wholesale and retail fruit business in the city of Woonsocket, accumulated a substantial amount of real estate. On May 10, 1927, he gave his business to his sons by bill of sale of that date. The following day he entered into an antenuptial agreement with the respondent, which was described, considered and sustained in *Gardella* v. *Gardella,* 50 R. I. 210 (1929), where this court was concerned with a guardianship proceeding instituted by all the petitioner's children on the ground that the petitioner was of unsound mind. This agreement, in substance, provided that at his death the respondent was to receive $30,000 in lieu of dower rights and payment thereof was secured by his promise not to alien or encumber certain real estate which should stand as security for the payment of that sum.

The petitioner and the respondent were married January 15, 1929, in Putnam, Connecticut. At that time he was sixty-eight years old and had twelve or thirteen children, apparently all adults, a number of whom were married. The respondent was much younger and had a daughter, who was a minor. Previous to the marriage the petitioner was living in Woonsocket with some of his children, and the respondent was living with her daughter on Blackstone street in that city. After the marriage he left his children and went to live with his wife and her child on Blackstone street, where they remained until about the summer of 1931. They then moved into a tenement of a house owned by the petitioner at 286 High street, Woonsocket, which is almost directly opposite to 289 High street where some of petitioner's children lived.

There were no friendly relations between the petitioner's children and his wife at any time. Furthermore, the children apparently would have nothing to do with their father until he returned to live with them. One of his daughters testified that, during all the time that her father lived with his

wife, the back door of their home at 289 High street was bolted against him "because we knew he had a key to the house", and that this practice was discontinued when he returned to live with them.

From the time that the parties in this case moved to High, street, the relations between husband and wife became more and more strained, resulting in constant bickerings and quarrels. On the other hand, the petitioner gradually became reconciled with his children, and finally, on March 6, 1932, he returned to live with them.

It is quite apparent from the testimony, either by direct statement from the wife or by reasonable inference from the conduct of the parties, that the antenuptial agreement was the real cause of the constant bickerings and quarrels, to which we have above alluded. The petitioner attributes this situation mainly to his wife's temper and treatment of him. The respondent, on the other hand, testified that such situation was the result of her husband's constant demand that she give up the agreement; that when she refused to comply with this demand, he cut down the household allowance or gave her no money at all; that he shut off her credit at the store, discontinued telephone service and stopped the delivery of evening papers; that he repeatedly told her that he would continue to act in that manner until she gave up the agreement; and that on one occasion he threatened that "this trouble should finish with blood."

The second period of our summary of the evidence, that is, from March 9, 1932 to May 18, 1937, is covered by litigation between the parties and by the alleged willful desertion that is the only ground for divorce in the petition and cross-petition now before us.

It appears in evidence that this is the third in a series of divorce proceedings between the parties. The chronological order of such proceedings, the alleged grounds for divorce,

and the decision in each case are as follows: On March 9, 1932, the respondent here filed a petition for divorce from bed and board on the ground of extreme cruelty. In that case the present petitioner filed a cross-petition for an absolute divorce on the same ground and on the further ground that the marriage of the parties was procured by fraud and misrepresentation on the part of the then petitioner. After a hearing on the merits, the petition and cross-petition in that case were denied and dismissed on July 9, 1932.

On June 23, 1933, the respondent here filed another petition for divorce from bed and board on the same ground of extreme cruelty, and again, on July 28, 1933, the present petitioner filed a cross-petition for an absolute divorce on the same ground. Each party also filed a plea of res adjudicata. The petition and cross-petition in that second case were denied and dismissed without a hearing on September 25, 1933.

In the instant case the petitioner, who was the respondent in the two previous cases, filed a petition on October 18, 1937 for an absolute divorce on the ground of willful desertion for more than five years. The respondent, formerly the petitioner in the two divorce cases above mentioned, subsequently filed a cross-petition praying for divorce from bed and board, also on the ground of willful desertion. The trial justice denied and dismissed both the petition and the cross-petition. It is from this decision that each party is prosecuting a bill of exceptions in this court. We note that in this case, as in the two former cases, the husband prays for an absolute divorce, while the wife in all instances prays for a divorce from bed and board.

It appears in evidence that from March 1932, when the petitioner returned to live with his children, he went to his wife's home but once, and then only to remove his personal belongings. There is testimony in behalf of the wife that on several occasions she personally or through intermediaries

made offers of reconciliation to her husband, but that he consistently refused them through fear of displeasing his children. Whether these offers of the wife were made by her in good faith is open to different interpretations.

A divorce will be granted only upon affirmative, convincing evidence that the respondent in an original or crosspetition has been guilty of an offense which is in violation of the marriage covenant *and* that the petitioner in either instance is without fault. *Grimes* v. *Grimes,* 61 R. I. 198, and cases cited. In the instant case, it was a part of the petitioner's and cross-petitioner's case to prove affirmatively two basic elements before either was entitled to a decision of divorce: First, the alleged ground of willful desertion; and second, the allegation that he or she had always demeaned himself or herself as a faithful spouse. *Hakonson* v. *Hakonson,* 64 R. I. 276, 12 A. 2d. 215. The determination of these issues is based upon the trial justice's judgment of the credibility of the witnesses and of the weight of their testimony. This being so, his decision will not be disturbed by this court unless clearly wrong.

The rescript of the trial justice, which gives a fair review of the evidence, does not expressly state the ground or grounds for the decision. But reading the rescript as a whole, with particular reference to the comments of the trial justice on the evidence and his quotations of law from cases cited in *Grimes* v. *Grimes, supra,* especially *Standish* v. *Standish,* 48 R. I. 179, it is clear to us that in his judgment neither party, as petitioner, had proved by affirmative, convincing evidence that he or she was *without fault,* even though the alleged ground of willful desertion may have been established, as to which he seems to entertain some doubt.

The trial justice apparently questioned the good faith of the parties in this and previous litigation between them, for in the concluding paragraph of the rescript he said:

"The case is unique in that back of all of the legal moves and gestures, there is a desire upon one side to hold to the coveted prize of the antenuptial agreement and on the other side to do everything possible to terminate the marriage, thereby nullifying this agreement."

The only law that the trial justice cites in his rescript as applicable in his view of the evidence relates solely to the kind and extent of the proof necessary to successfully maintain a petition for divorce. He quotes from the cases of *McLaughlin* v. *McLaughlin,* 44 R. I. 429, and *Hurvitz* v. *Hurvitz,* 44 R. I. 478, both of which cases are cited with approval in *Grimes* v. *Grimes, supra.* The following quotation, also from the *Grimes* case, is of special significance in determining the real ground upon which the trial justice based his decision: "In *Standish* v. *Standish,* 48 R. I. 179, at 183, this court said 'the petitioner was not entitled to relief because he did not come into court with clean hands.'" In the circumstances of the instant case, it is quite clear that the trial justice denied and dismissed both the petition and the cross-petition because, in his opinion, neither party was without fault. From our consideration of the evidence, we cannot say that he was clearly wrong in so deciding.

Under the view that the trial justice took of the evidence in this case, which view we have just approved, it becomes unnecessary for us to consider whether either party was in fact guilty of willful desertion, or whether either party, if guilty of such desertion, had made a *bona fide* offer of reconciliation. The thirty-nine exceptions to the admission or exclusion of evidence urged by the petitioner, which we have examined, lose all merit, if any they otherwise had, under such a view. Assuming, without deciding, that, as the petitioner contends, the first divorce case in 1932 "merged all causes of divorce existing at that time", still we are of the opinion that evidence prior to that date, even if inadmissible to prove a ground for divorce, was properly admitted to

prove or disprove that either party, as a petitioner, was without fault.

We will now consider the petitioner's appeal from the decree granting respondent's motion for additional counsel fees for services in this court in connection with the bills of exceptions and the appeal now before us. At the hearing on this motion, conflicting testimony was presented as to the financial condition of the husband and of the wife. Under G. L. 1938, chap. 416, § 14, the court may "in its discretion" allow counsel fees out of the estate of the husband in case the wife has no estate of her own available for such purpose. The trial justice granted the respondent's motion and awarded her the sum of $200 "with a good deal of reluctance." In view of such expression by the trial justice, the petitioner contends that the respondent's motion for counsel fees should have been denied. The expression of the trial justice upon which the petitioner relies was probably induced by the sharply conflicting character of the evidence before him, which was none too clear. But the matter was before him for ruling, and after due consideration, he exercised his discretion in favor of the respondent. After examining the evidence, we cannot say that there was a clear abuse of discretion in his ruling.

All of the petitioner's exceptions are overruled. The respondent's exception is also overruled. The petitioner's appeal from the decree allowing counsel fees is denied and dismissed, and the decree appealed from is affirmed. The case is remitted to the superior court for further proceedings.

*Walling & Walling, Ambrose W. Carroll,* for petitioner.

*John R. Higgins,* for respondent.