## MOORE v. DICKINSON.

1. CASE CRITICISED—ELECTION OF CAUSE OF ACTION.—The ruling in Jackins *v.* Dickinson, *ante*, 436, applied to a similar complaint in this case; and there not being two causes of action, there was no error in refusing to require the plaintiff to elect between the alleged two.

2. LETTER—BEST EVIDENCE.—Testimony as to declarations by an agent of defendant of admissions contained in a letter from defendant to this agent, was improperly received in evidence, there being no testimony to show that the letter was lost.

3. DECLARATIONS OF AGENT.—In action on a railroad construction contract, whereby defendant was to pay plaintiff, a sub-contractor, out of moneys received from A for construction, defendant's agent, in managing and

38—39

carrying on the business and paying for the work done, was not shown to
be an agent of defendant in collecting moneys from A, and, therefore, his
declarations of what defendant said to him about receiving money from A
was not admissible in evidence against defendant.

4. CHARGING JURIES—WEIGHT OF TESTIMONY.—In commenting upon Green-
leaf's statement in his work on Evidence (cited by counsel), that verbal
admissions must be received with caution, the trial judge did not err in
instructing the jury that they were not bound by Mr. Greenleaf's argu-
ment, but must determine for themselves the weight to be given to the
evidence of alleged admissions.

Before NORTON, J., York, October, 1892.

This was an action by John S. Moore and Brevard D. Springs,
partners as Moore & Springs, against P. P. Dickinson, com-
menced in January, 1891.

*Messrs. Hart & Hart,* for appellants.

*Mr. William Munro,* contra.

September 15, 1893.   The opinion of the court was delivered
by

MR. CHIEF JUSTICE McIVER.   This case, in some of its fea-
tures, is so much like the case of *Jackins, Crosby & Co.* v. *Dick-
inson,* heard and determined at the present term [*ante,*
p. 436], that we need only to refer to what we have said
in the opinion filed in that case as sufficient to dispose
of the first two grounds of appeal in this case.   For if, as we
have held in that case, the complaint (practically the same as
in this case, so far as the demurrer was concerned,) did not
purport to state two causes of action, there was, of course, no
error in refusing the motion to require the plaintiffs to elect
the cause of action upon which they would go to trial.

The present case, however, differs materially from the case
referred to in some of its features.   Here the defendant, in his
answer, set up by way of defence that, by the express terms
of the contract upon which the plaintiffs based their action,
he was under no obligation to pay to the plaintiffs anything
for the work which they had done until he had received pay-

ment from the Massachusetts and Southern Construction Company (called in the contract, by a clerical error, the Charleston, Cincinnati and Chicago Railroad Company). So that, in this case, it became, and was, a material inquiry whether the defendant had received, or ought to have received, from the Massachusetts and Southern Construction Company the money with which to pay the plaintiffs, and failed to do so by reason of his own fault or negligence. The claim on the part of the plaintiffs was that the money had been offered to the defendant, accompanied with a statement from the president of the construction company "that if he needed it, he should have it, because it was due him; but if he took it, it would bring about a crisis in the scheme of the 3 C's system; and, in consequence of that statement, Col. Dickinson had allowed it to be diverted from North Carolina to Tennessee."

Upon this point, there was a conflict of testimony; and when one Adams was offered as a witness to prove that he heard one Colton, the alleged agent of Dickinson, say that he had heard, through letters from Dickinson, what is quoted above, his testimony was objected to, upon two grounds, as we understand it: 1st. Because the letters referred to were the highest evidence. 2d. The declarations of Colton, as to what he had learned from Dickinson, were mere hearsay, and were, therefore, incompetent. The objection was overruled, and this ruling is made the basis of the third ground of appeal. When the testimony of Adams as to what he had heard from Colton was first offered, counsel for defendant objected, unless there was further proof of agency. Testimony was then offered to show that Dickinson resided in New York, and that Colton was his general agent, residing on the line of the railroad under construction in North Carolina; that he made the contracts with defendant's sub-contractors, signed the checks by which they were paid, and had full control and management of the work from Rutherford to Marion, in North Carolina. After hearing this testimony, the Circuit Judge ruled the question competent.

Thereupon the witness Adams proceeded to state that he had information from Col. Dickinson that the money—when an

objection was again interposed, upon the same ground as before, and also upon the ground of hearsay. The "Case" does not show any ruling as to this objection, and the witness proceeded to say that Colton stated that he had received letters from Col. Dickinson—when objection was again made, on the ground that the letters are the highest evidence. Upon this, likewise, there does not appear to have been any ruling. The examination of the witness then proceeded as follows: "Q. Did you have any conversation with Mr. Colton about this matter that I asked you? A. I did. Q. What did he say? A. He stated, as I was about to say before, that we would have had our money, but that promises that had been made to Col. Dickinson hadn't been fulfilled by Mr. Harris," followed by the statement quoted above to the effect that Harris had offered the money to Dickinson, at the same time saying that if it was taken it would bring about a crisis in the affairs of the railroad company, in consequence of which statement Dickinson had consented that the money should be diverted from North Carolina to Tennessee.

It seems to us that this testimony should have been rejected, if upon no other ground, that the witness was manifestly speaking of information derived from Dickinson through letters, which were, of course, the highest evidence, and in the absence of any testimony tending to show that such letters had been lost or destroyed, the testimony as to the contents of such letters was incompetent. There is also another ground upon which we think the testimony was incompetent. While the rule is well settled that, after the agency is established, the acts, declarations or admissions of the agent, within the scope of his agency, are competent evidence against the principal, yet it is equally well settled that such acts, declarations or admissions, as to matters not within the scope of the agency, are not competent evidence against the principal. 1 Greenl. Evid., §§ 113, 114; 1 Am. & Eng. Enc. Law, 410. Now while in this case there is abundant testimony to show that Colton was the agent of Dickinson in managing and carrying on the work of constructing the railroad in North Carolina, we do not find any testimony tending

to show that Colton was agent for collecting the money from the Massachusetts and Southern Construction Company, and, therefore, any declaration or admission made by Colton as to what Dickinson had said to him in reference to such collections, was merely hearsay, and as such incompetent.   It seems to us that the only just inference that can be drawn from the testimony is that Dickinson, residing in New York, attended to that himself, and that Colton had nothing to do with it. Colton's declaration as to what Dickinson may have said to him, in relation to a matter which does not appear to have been within the scope of his agency, should have been held incompetent.

It only remains to consider the fourth ground of appeal, which is in these words: "For error (after defendant's counsel had read section 200 of Greenleaf on Evidence to the jury) in charging the jury as to the weight to be given by the jury to casual (alleged) declarations of the defendant, made more than two years before trial."   We do not understand that the Circuit Judge, in his charge to the jury, gave them any instructions as to the weight to be given by the jury to the alleged declarations of the defendant.   After alluding to the fact that defendant's counsel had quoted "as law, from an author of the highest respectability, Mr. Greenleaf on Evidence, he proceeded to use the following language: "But what Mr. Greenleaf says there is not law to you, but is the logical argument of a very learned judge of great experience, and if it corresponds with your experience or with your observation, it would be binding upon you.   But that argument, while it is a very strong one, may or may not be adopted by you in passing upon the facts of this case.   Of course, gentlemen, your experience is valuable, and you are presumed to be able to determine whether or not a witness who attempts to testify from mere memory, even to a conversation, has not been mistaken in his hearing of the conversation, or is mistaken in his memory of the conversation, or whether he is wilfully misstating the conversation.   If you are satisfied that he is wilfully misstating it, of course, you will put no dependence in him; but all past transactions depend upon human testimony in one form or an-

other, and it is for you to say what testimony produces belief in your minds of the existence of a fact. You are not bound, because it is read out of a book (to say), that certain testimony does not produce a belief in your mind. It may not produce it, but it may."

We see no error of law in these observations to the jury. Section 200 of Greenleaf does not purport to lay down any definite rule of law upon the subject under consideration, but at most suggests that verbal admissions should be received with great caution, for the reasons there indicated, which the judge expressly stated constituted a very strong argument. He did not advise or instruct the jury to disregard the caution there suggested, but, on the contrary, simply instructed the jury that, after all, it was for them to determine the question according to the way in which it affected their own minds, as they were solely responsible for such determination. This was precisely in accord with what was said in *Com.* v. *Galligan*, 113 Mass., 202, cited in a note to section 200 of Greenleaf on Evidence—that the value or weight of the testimony "is wholly a matter for the jury."

By reason of the error suggested in the third ground of appeal, there must be a new trial.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.