### THOMPSON *v.* PURDY.

[77 Pac. 113.]

MISCONDUCT OF COUNSEL — CURING ERROR.*

1. Improper remarks of counsel during a trial, promptly disapproved by the
judge, and not afterward continued, do not constitute reversible error, it appear-
ing quite certainly that no prejudice resulted.

PROPER LIMITS OF CROSS-EXAMINATION.

2. In the development of matters brought out on direct examination, the
practice is to permit such questions as tend to bring out the whole truth con-
cerning them.

INSTRUCTION AS TO EFFECT OF ORAL EVIDENCE.

3. Where, after charging on the general features of the case, the court gave
the statutory injunctions touching the effect of evidence prescribed by B. & C.
Comp. § 857, and in so doing charged that oral admissions and declarations of
parties should be received with caution, "but that evidence of oral admissions
and oral contracts, when proven declarations of parties, constitute very strong
testimony," such instruction was not erroneous as in effect charging that evi-
dence of oral contracts should be received with caution.

---

*NOTE.—See, also, *State* v. *McDaniel*, 39 Or. 106.— REPORTER.

HARMLESS ERROR.

4. Where the verdict rendered was below the amount actually due on the basis of 6 per cent interest, an instruction permitting the allowance of 8 per cent on a part of the debt which had accrued prior to the enactment of Laws 1898, p. 15, reducing the rate to 6 per cent, if error, was harmless.

From Washington: THOMAS A. MCBRIDE, Judge.

Suit by T. W. Thompson against B. F. Purdy. Plaintiff and defendant by their joint notes, three in number, borrowed $4,000 for the use and benefit of the Gaston Coöperative Milling Company, and plaintiff, being compelled to pay the amount due, sued the defendant for contribution. The defendant answered that after the payment of the first note, he having theretofore advanced certain sums of money to the milling company, it was agreed between him and the plaintiff that he would continue to make advances to said company as they were needed until the total amount thereof should equal the said sum of $4,000, and that thereafter the plaintiff should pay the remaining two notes, and release defendant from any claim for contribution arising on account of his having to pay such joint obligations; that the defendant complied with the agreement on his part, and made the stipulated advances, exceeding said sum of $4,000. The sole issue at the trial was upon the answer, and, judgment having been given and rendered for plaintiff, defendant appeals. The case was submitted on briefs under the proviso of Rule 16 of the supreme court: 35 Or. 587, 600.        APPEALED.

For appellant there was a brief by *Mr. Samuel B. Huston.*

For respondent there was a brief by *Mr. Julius C. Moreland.*

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. The bill of exceptions shows that defendant gave evidence in his own behalf tending to support the agreement

set out in his answer, and that he had complied on his part by making the stipulated advances to the milling company. On cross-examination plaintiff's counsel produced the books of the concern, and interrogated the witness with reference to certain entries made therein. Among other things, he was asked if he had not continued as president and manager of the concern until he put it into bankruptcy. Answering an objection made to the question, counsel for plaintiff stated that the witness acted as president and manager, ran the business, paid himself, and then carried it on, "and milked it till it was dry." These remarks, on motion of opposing counsel, were stricken out by the court, and the jury directed to disregard them. Without being answered, the question was superseded by another. Later on, while another witness was under examination, plaintiff's counsel again remarked, "I would like to bring out all the facts concerning this matter, but counsel is afraid of them." This language was also stricken out. The first error is predicated upon these several remarks of counsel as being calculated to prejudice the minds of the jury unfavorably to defendant. The objectionable tactics of counsel were not further persisted in, and, in view of the prompt action of the court, on its attention being called to the matter in each instance, in directing the jury to disregard the exceptional remarks, thereby giving it the stamp of its positive disapproval, it is hardly possible that defendant's cause could have been affected adversely. The alleged error cannot, therefore, be maintained.

2. While the defendant was still undergoing cross-examination, plaintiff's counsel, over objection as immaterial and irrelevant, further inquired: "This agreement with Thompson was to borrow the money and complete the mill, wasn't it?" to which he answered, "Yes, sir; it was for the purpose of putting the mill in operation." The examina-

tion appears to be relevant to the agreement relied on by defendant in his answer, and was proper cross-examination, being germane to the matter elicited in chief.

Another exception relates to the cross-examination of E. H. Jeter, who was secretary and bookkeeper of the milling company, also a stockholder and member of its board of directors. He was asked, "Who was treasurer of this concern?" to which he was permitted to answer, "Not having the record, I cannot state positively whether it was Mr. Hibbs or Mr. Raymonds." He further testified : "When persons came in to pay their bills, if Mr. Purdy was there and settled with them, he took the money. If Mr. Purdy wasn't there, I usually received the money." All this was responsive to a general inquiry as to the manner in which the business of the company was transacted. The witness had explained without objection that sometimes the company had money and sometimes it had not. If it had no money in the bank, or not sufficient, and if a farmer wanted to sell his wheat, Purdy " backed it." At times he had checks given to him by various parties. Sometimes he would turn these over, and at other times give his individual check for the difference, or give cash. The purpose of the inquiry seems to have been to sift defendant's account for advances which he claims to have made the company in pursuance of his alleged agreement, and it is not perceived in what respect it was not a perfectly legitimate inquiry. The purpose of cross-examination is to arrive at the truth, and when, under the exercise of a liberal discretion of the trial court, the witness speaks within the legitimate compass of the examination in chief, there can arise no pertinent exception.

3. In the course of its instructions the court said to the jury: "Oral admissions and declarations of parties should be received with caution, remembering the liability of the human mind to err in remembering the statements and

declarations of parties. When the declaration of a party is brought in, we should cautiously receive it. Evidence of oral admissions and oral contracts, when proven, declarations of parties, constitute very strong testimony, of course. There can't be anything stronger when they are established." In saving an exception to this language, counsel said: "The court instructed, with reference to oral statements or contracts of parties, that they should be received with caution. I know that is the rule in reference to admissions, but I don't think that is the rule in reference to oral contracts." And the court replied, in the presence of the jury, "I think declarations of this character should be cautiously received." Error is assigned in this relation. What the court meant is not far to seek. After charging upon the general features of the case, the court was giving the statutory injunctions touching the effect of evidence (B. & C. Comp. § 857), as that they were the sole judges of the facts; that they were not bound to find in conformity with the declarations of any number of witnesses whose evidence did not satisfy the mind as against a less number; that every witness is presumed to speak the truth until discredited; that a witness shown to be false in one part of his testimony should be distrusted in others; that evidence is to be estimated not only by its intrinsic weight, but also by the evidence which it is apparently within the power of one side to produce and the other to contradict, etc.; and, lastly, that the admissions and declarations of the parties should be received with caution. As explanatory, the court further said: "When the declaration of a party is brought in, we should cautiously receive it. Evidence of oral declarations and oral contracts, declarations of parties, constitute very strong evidence, of course. There can't be anything stronger when they are established." The matter was further developed when counsel made his objection. But there was

certainly no attempt on the part of the court to instruct that evidence of oral contracts should be received with caution.  If there were oral admissions and declarations shown to have been made with reference to such contract or.otherwise, those the court enjoined the jury to receive with caution, but not, as we interpret the instructions, to receive with caution the evidence touching the oral contract itself.  It is not clear from the bill of exceptions what admissions and declarations were shown in the course of the trial, and the relevancy of the instructions is not, therefore, entirely manifest, so that no error is disclosed by the record in the particular complained of.

4.  The next assignment of error is with reference to the instruction of the court whereby the jury were directed, if they found for plaintiff, to allow 8 per cent interest on the first two notes, they having been paid by plaintiff before the act of the legislature reducing the legal rate of interest to 6 per cent per annum went into effect: Laws 1898, p. 15.  But whether this be error or not, it is, in any event, harmless, as a careful computation of the notes at the rate of 6 per cent only will show that the verdict is below the amount actually due upon that basis.

AFFIRMED.

Decided 3 October, 1904.

ON MOTION FOR REHEARING.

MR. JUSTICE WOLVERTON delivered the opinion.

In a petition for a rehearing counsel for appellant challenges the correctness of this court's holding in three particulars.  As to the first two, it seems to us, after all, that the argument now advanced is but an elaboration upon that contained in the brief submitting the cause, and we see no reason for receding from the determination originally reached.

As to the third, it is submitted that the verdict is in excess of the judgment prayed for in the complaint, a question now made for the first time. This is true, if interest be computed at the rate of 6 per cent per annum. The pleader has made some mistakes, but, taking into account the allegations of the complaint, it will be found that the computation at 6 per cent exceeds the verdict. The prayer demands interest, however, at the rate of 8 per cent per annum, which if added to the principal sums named will exceed the verdict, hence it becomes apparent that the verdict is not in excess of the judgment prayed for in the complaint, in any view that might be taken as to the rate of interest recoverable, consequently there is no error in the former conclusion.

REHEARING DENIED.

Decided 20 June, rehearing denied 3 October 1904.