CATHERINE RILEY *vs.* CONSTANTINE TSAGARAKIS *et al.*

MARCH 6, 1929.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

RATHBUN, J. This action of trespass on the case for negligence was brought by the widow of Terrance Riley to recover for his death which was caused by the defendants' Ford truck. The trial justice directed a verdict for the defendants and the case is before us on plaintiff's exception to such direction and on her exception to the exclusion of testimony.

The accident occurred on Broad street in the city of Cranston a short distance north of the intersection of said street with Wentworth avenue. Broad street at this place runs approximately north and south. The deceased was working at the time as a trackman for the United Electric Railways Co. The width between the curb lines of Broad street is 44.5 feet. On said street said company maintained double tracks and repairs were being made on the easterly rail. Beginning at a point about 5 feet south of the northerly curb line of Wentworth avenue and extending north 31 feet, an excavation 15 inches wide was made along the easterly side of said easterly rail. Another excavation of shorter length, but of the same width, along the same side

of said rail commenced about 27 feet north of the northerly end of the excavation first described. Opposite to each excavation a pile of dirt extended easterly 3 or 4 feet. The two piles of dirt were about 40 or 50 feet apart. For the purpose of protecting the traffic, and perhaps also the workmen, three yellow flags 3 ft. x 3 ft. were placed along the line of excavation. One was placed 5 or 10 feet south of the first excavation, another about the same distance north of the second excavation and third midway between the two. Opposite the first pile of dirt a truck about 7 feet wide was parked with the left wheels close to the easterly curb. The distance between the easterly rail and the easterly curb was 24.25 feet. Between the truck and the southerly pile of dirt was a space of about 11.75 feet through which traffic passed. Along the easterly rail several workmen were engaged in filling the excavations. Shortly before the accident the deceased approached the foreman, who was standing by the side of the southerly pile of dirt, and asked for orders. He was directed by the foreman to place on the truck, which was parked at the easterly curb, certain tools which were on the sidewalk near the rear of said truck. After receiving instructions from the foreman the deceased started to walk across the street in a diagonal course towards the rear of said truck. The distance from his starting point to the place where he fell was estimated by one witness, who saw deceased start to cross the street, to be 25 or 28 feet. Soon after deceased started to cross the street the defendants' truck passed through the narrow space between the pile of dirt and the parked truck and apparently struck the deceased, knocking him to the street. The other workmen on hearing a crash looked and saw him lying face downwards in the street 4 or 5 feet in the rear of the parked truck. His feet extended 2 or 3 feet to the west of the righthand rear corner of said truck. His skull was fractured between the bridge of the nose and the hair line. The back of his head was cut and the skull at this point may have been fractured. The flesh was cut on the back portion

of his left forearm and the left radius—one of the bones in the forearm—was fractured. As a result of these injuries, he died within a few hours.

The defendants' truck was equipped with a platform body with stakes and sideboards. The truck was not damaged, but on the right-hand corner of the body, which extends slightly beyond the cab, were found blood stains, short spears of hair and bits of flesh. The defendants' truck which was 5 feet, 5.8 inches in width passed within one foot of the parked truck. There was evidence that, without any signal being given, the defendants' truck passed through the narrow space between the pile of dirt and the parked truck at a speed of 25 miles per hour. The defendants' driver testified that his speed in passing the parked truck was not more than 8 or 10 miles per hour and that he sounded the horn at Wentworth avenue and again before passing the parked truck. It is evident that the trial justice was not impressed by the testimony of witnesses for the plaintiff relative to the speed of defendants' truck. However, in directing a verdict for a defendant, a trial justice should not pass upon the credibility of witnesses. Before directing a verdict for the defendant the evidence should be viewed in the light most favorable to the plaintiff and all reasonable inferences from the evidence should be drawn in favor of the plaintiff. A verdict should not be directed for a defendant if on any reasonable view of the testimony a plaintiff can recover. *Reddington* v. *Getchell*, 40 R. I. 463; *O'Donnell* v. *U. E. Rys. Co.*, 48 R. I. 18.

Broad street at the place of the accident is straight. It was a clear day and the defendants' driver could have observed the parked truck and men working in the middle of the street when he was more than 1000 feet away. We think that the jury might reasonably have found from the evidence that the defendants' driver was negligent in driving the Ford truck without sufficient warning too rapidly through the narrow space.

The next question is whether there was any evidence from which it might be inferred that the deceased was in the exercise of due care.

Apparently no one saw the accident. The defendants' driver testified that the deceased did not cross the street in front of him; that as he passed the parked truck he heard a thump at the side of his truck and, looking back, saw the deceased for the first time when he was lying in the street. Deceased was seen to start walking diagonally across the street towards the rear of the parked truck, and, according to the testimony of several witnesses, it was but a very few seconds before the crash was heard and he was discovered lying in the street. One witness estimated the time to be between four and five seconds.

The defendants argued that deceased must have reached a position of safety behind the parked truck and then turned around and walked into the side of the defendants' passing truck. There is nothing to support this contention except the statement of defendants' driver that he did not see the deceased until after the accident. The driver also testified that deceased did not cross the street in front of him. It is clear that deceased did cross the street at no great distance in front of defendants' truck. Said driver testified that when he passed the parked truck he was driving 8 or 10 miles per hour at a distance of 3 or 4 feet behind another automobile. No one else, apparently, saw the automobile which he says was preceding him at such a slow rate of speed. There was a marked conflict between his testimony and that of the plaintiff's witnesses. The jury might not have believed the driver's testimony. There was evidence that deceased never reached the sidewalk. William Riley, who was standing on the easterly sidewalk near the rear of the parked truck, so testified. No tools were found in the street and none were taken from the sidewalk. Defendants' truck passed within one foot of the parked truck. It is a possible, and perhaps the most reasonable inference to be drawn from the evidence produced, including the injuries

which the deceased received, that he was hit just before he reached a position of safety; that the right front fender, or some other portion of the Ford truck, cut his left forearm and fractured a bone therein; that the force of the blow threw him so that the back part of his head came in contact with the side of the body of defendants' truck and that the blood, hair and flesh came from the back of the deceased's head rather than from his forehead—as argued by defendants' counsel—which was cut only to the hair line. When first seen immediately after the accident the deceased was lying face downwards. A blow on the back of his head throwing him violently face forward against the hard surface of the street would account for the skull fracture in the frontal. We can not say that there was no evidence that the deceased was in the exercise of due care.

Persons engaged in repairing streets can not reasonably be expected and are not required to use the same amount of vigilance for their safety as is required of ordinary pedestrians crossing the street. Such workmen have a right to assume that persons operating vehicles will do so with a reasonable degree of care for the safety of those busily engaged in repairing streets. *Dinan* v. *Chicago M. E. R. Co.*, 164 Wis. 295. See also *Marsh* v. *Boyden*, 33 R. I. 519; *Ford* v. *Dowell*, 243 S. W. (Mo.) 366; *Franey* v. *Seattle Taxicab Co.*, 80 Wash. 396.

The case should have been submitted to the jury on all of the evidence. Had there been a verdict for the plaintiff and a motion by the defendants for a new trial it would then have been the duty of the trial justice, in passing upon such motion, to weigh the evidence and determine which party had the preponderance of the evidence. In so doing it would have been his duty, at that time, to pass upon the credibility of the witnesses and, if, in his judgment, the verdict failed to do substantial justice, grant a new trial. *Reddington* v. *Getchell, supra; O'Donnell* v. *U. E. Rys. Co., supra.*

The exception to the direction of a verdict for the defendants is sustained. The other exception is overruled and the case is remitted to the Superior Court for a new trial.

*Patrick P. Curran, Hoyt W. Lark, Curran, Hart, Gainer & Carr,* for plaintiff.

*Greenough, Lyman & Cross, Richard E. Lyman,* for defendant.