## ANDRUS v. S. J. BOUDREAUX & SON et al.
### No. 1417.

Court of Appeal of Louisiana.
First Circuit.
Jan. 21, 1935.

Williams & Blackshear, of Oakdale, for appellant.

Pugh & Buatt, of Crowley, and J. I. Boudreaux, of Abbeville, for appellees.

ELLIOTT, Judge.

Cliff Andrus while employed in relief work in the parish of Allen under the auspices of the Emergency Relief Association was struck by a truck belonging to S. J. Boudreaux & Son, while being driven by a negro named Willie Wilson, and very seriously injured. He brought suit against S. J. Boudreaux & Son as owners of the truck for $14,868 on account of his personal injuries. Defendants appeared and excepted to plaintiff's petition on the ground that it set forth no right or cause of action. This exception was overruled.

Emergency Relief Association, having made payments of compensation to plaintiff on its part on account of his injuries, intervened in the suit and prayed that in the event of recovery by the plaintiff it have judgment against him for the compensation it had paid and might further pay him on said account.

Defendant S. J. Boudreaux & Son in their answer deny every fact alleged against them by the plaintiff on which liability is claimed to exist. They admit that the truck belonged to them, but allege that they had loaned it on the day of the injury to Charley Meshmack for the purpose of enabling him to sell oysters; that said Meshmack hired Willie Wilson for his driver; and that if plaintiff was injured by said truck, it was while it was being operated by said Meshmack as borrower from them, and that they are not responsible for same. Their defense is that Willie Wilson, in driving at the time in question, was not working in their employment nor under their control, but in the employment and under the control of said Meshmack. Denying all responsibility on said account, they alternatively and in the event the court finds that they had charge of the truck, and by their negligence caused plaintiff's injury, they then in that event allege that the plaintiff was also at fault and negligent in the matter of his injury, and that his fault and negligence contributed to bring about the accident that caused his injury, and he has no right to recover of them because of his contributory negligence and fault.

The lower court, pretermitting and expressing no opinion as to whether the defendants or Meshmack were responsible for the driving of the truck on the day in question, held that the truck was being driven carelessly and at excessive speed at the time and place in question, but took the position that plaintiff himself was at fault and negligent, and that his contributory fault and negligence contributed to and brought about his own injury, and that he could not recover on that account. Plaintiff has appealed.

Defendants answering the appeal allege that the court erred in overruling their exception of no right or cause of action, and in argument and brief pray that the exception be now sustained and plaintiff's suit dismissed on that account. The judge a quo gave reasons for overruling the exception. We have considered the exception together with the reasons of the judge a quo for overruling it.

Defendant's contention is that they are sued for damages on account of the negligence of the driver of the truck, alleged to be their employee, but that the petition does not allege that the employee was driving in the exercise of the functions in which he was by them employed. The averments of the petition are such that the question is one about which a difference of opinion may exist.

There is no direct averment of facts pursuant to which it may·be said that the truck was being driven by defendants' employee in the exercise of the functions in which he was by them employed. There is averment to the effect that they are responsible for the acts and omissions of the employee engaged in driving the truck, but that is a mere legal deduction. There is averment, however, that the truck was owned and operated by defendants, and other language here and there through the petition to the effect that the injury to the plaintiff was due to fault and neglect in driving the truck. Taking into account all the averments of the petition and what we think to be a proper deduction and inference from facts averred, we have come to the conclusion that the petition sufficiently alleges facts from which it may be inferred that the driver of the truck was driving it in the employ of the defendants and in the exercise of the functions in which he was by them employed.

The exception was in our opinion properly overruled. The lower court did not expressly act on the issue raised by the answer that Charley Meshmack had sole charge and con-trol as borrower from the defendants at the time plaintiff was injured. But by overruling the exception of no cause of action the lower court in effect held, and this court affirming, in effect holds that the driver, Willie Wilson, is alleged to have been driving in the employment of the defendants.

There was evidence introduced on the trial by the plaintiff in support of an averment to the effect that defendants had agreed to pay him compensation; had paid him $5 and promised to pay him that amount each week on account of his injury. Defendants denied the averment, and supported their denial by testimony. There was no direct ruling on the question. Facts and circumstances adduced support both sides and leave this question in considerable doubt.

The lower court found that the truck was negligently driven and then took up the defense alleged in defendants' answer, that plaintiff was·also negligent; that his contributory fault and negligence had brought about his own injury, and refused his demand on that account. We are satisfied that the truck was being driven at an excessive speed and carelessly and negligently at the time and place in question, so we will take up the defense of contributory negligence urged by the defendants as was done in the lower court.

The evidence shows that Willie Wilson accompanied by Charley Meshmack and perhaps by another white man, whose identity is uncertain, was driving north on the highway leading into Oberlin. There was roadwork going on at the time, and the plaintiff was foreman of the men engaged in the work. It appears that there were about 12 men engaged in the work, and as the truck approached the place where the work was going on, about half of the men were on the east side and the other half on the west side of the road. The paymaster of the Emergency Relief Association had just arrived and parked his car on the left or western side of the road partly in the cement and partly on the shoulder of the road and near the place where the men were at work. The plaintiff was standing, at the time, on the right or eastern side of the road. The road was straight; the pavement was about 18 feet wide and it was broad daylight, with nothing to prevent a party standing on the side of the road from seeing automobiles coming in the road from either direction. An automobile passed going south, and just as it passed the plaintiff started across the road going diagonally in the direction of the paymaster. There is testimony that plaintiff rushed across the road, but whether he was· walking fast or running we are unable to say. But it is not likely that he would have walked unusually fast, rushed or run, unless he had seen the truck coming in the road as he started across, so close at hand that it was necessary to cross quickly. It seems to be a proper inference from the testimony that plaintiff had seen the truck driven by Willie Wilson coming north in the road and his purpose was to cross ahead of it. Some of the witnesses say that the truck, at the time plaintiff started across, was not distant more than 15 or 20 feet, and coming at great speed. The on-coming truck was in full open view in the road and was. bound to have been seen by the plaintiff had he looked down the road at the time of starting across. It was his duty to look for his safety before starting across. He must be regarded as having seen the truck whether he looked or not. He could not have helped seeing it if he had looked, because it was right at hand and coming on at fast speed. The truck struck him as he rushed across the road, breaking his leg and causing him serious injury.

Plaintiff contends that he was not at fault and that at the time he first saw the on-coming truck going north he had passed the cen-

ter of the road going west; that the truck at the time it struck him was on the wrong side of the road going north; that if it had been on the right-hand side of the road, as it should have been, it could not have struck him.

Some witnesses support the plaintiff in this respect, but upon the whole there·is room for doubt. We quote the plaintiff himself in answering some questions asked him by the court:

"Q. Did the car that was going south, which passed just before you started to cross the road, ever cross over on the east side of that black line? A. It seemed like it was on the edge of it on the black line.

"Q. After this car going south had passed you, did it get on the east side of the black line? A. No Sir. It never cross over during the time I saw it.

"Q. Why didn't you see the truck coming? A. Because it may have been so near the black line or may be straddle of it or may be on the west side. I don't know, I didn't see it.

"Q. About how far was the car travelling south from you at the time the truck struck you? A. I don't know. It was going pretty fast; when I looked I didn't see any.

"Q. I don't understand how it was you didn't see the truck coming from the south, if you looked. A. I looked.

"Q. Can you give me any reason you didn't see it? A. The only reason is because it must have been coming facing the car that it 'passed.' "

Willie Wilson, the truck driver, questioned by the court:

"Q. What part of the pavement was Mr. Andrus on when you first saw him? A. On my side.

"Q. How far from the edge? A. About the middle of my track.

"Q. How far were you from him when you first saw him? A. 10 or 15 feet.

"Q. Why didn't you see him before that? A. I didn't have no idea any one being in the road at that time; I was watching this automobile.

"Q. You were looking over to the lefthand side? A. I was watching this other automobile.

"Q. You mean the one passing on your left? A. Yes, Sir."

The evidence indicates that the truck at the time it impacted with the plaintiff was in about the middle of the road. It should not have been, except for some emergency. But no matter whether the truck was in the middle of the road or even on the west side of it, plaintiff saw it coming fast and right close at hand and should not have tried to cross the road immediately behind one automobile and in front of another coming on at fast speed, distant not more than 15 or 20 feet. He should not have thus voluntarily, heedlessly, and thoughtlessly left a safe place and exposed himself to an obvious danger by trying to cross the road under the circumstances which attended such a movement. He should have waited for it to pass.

It is our opinion that the lower court properly held that plaintiff was himself negligent and at fault, and that his own fault and negligence in the way stated contributed to bring about his own injury, under circumstances and in a way that made it impossible for the truck driver to save striking him after he was seen in front of the truck.

Judgment affirmed.