# REID et al. v. OWENS et al.

No. 6035. Decided August 31, 1939. (93 P. 2d 680.)

Rehearing denied December 28, 1939.

*Gardner & Latimer,* of Salt Lake City, for appellants.

*Thomas & Thomas* and *Ingebretsen, Ray, Rawlins & Christenson,* all of Salt Lake City, for respondents.

McDONOUGH, Justice.

This case has been tried three times, and this is the second time it has been before this court on appeal. The earlier opinion is reported in 92 Utah 432, 69 P. 2d 265. This action arose out of an automobile accident in September 1932, wherein the defendant, George Owens, drove a car which struck Clair G. Reid, the father of the plaintiffs, and caused his death. On the first trial a verdict was directed in favor of W. F. Owens, father of the defendant, George Owens, and a jury was unable to reach a verdict as to George Owens, the driver. In the second trial, against George Owens only, the jury brought in a verdict of no cause of action, and a motion for a new trial was granted. In the meantime the dismissal of defendant W. F. Owens was appealed to this court, and we held that certain admissions of knowledge of recklessness and speeding propensities of the son, and of insurance taken out to guard against their results, were sufficient to make a jury question on the joining of W. F. Owens as defendant. Accordingly the third trial was against both father and son, and the jury returned a verdict against them on which the district court gave judgment. Both defendants have appealed from that judgment.

Appellants rely chiefly on error of the trial court in four respects: (1) submitting the question of deceased's contributory negligence to the jury; (2) admitting testimony of

negligence and the carrying of insurance to cover it; (3) refusing to instruct the jury to regard with suspicion testimony of admissions of liability made by the defendants, W. F. Owens; and (4) refusing to rule that this action was precluded by the claim and receipt of compensation from the Industrial Commission by the deceased's widow though she is not a plaintiff herein.

The question raised by the first assigned error is the most difficult. The trial court instructed the jury on the theory that the deceased was working on the highway and could therefore rely on vehicle drivers to keep a lookout for him, his duty to exercise care being less strict than that of one not so working. This is sound doctrine when the facts are appropriate, and the question here is whether the facts justify the application of the rule.

On September 13, 1932, the deceased and six other employees of the Wasatch Gas Company were engaged in making a gas connection at 1208 East 33rd South Street in Salt Lake County. This house is on the south side of the street and the gas main line is on the north side. Thirty-third South Street has a paved surface eighteen feet wide, under which it was necessary to tunnel in order to lay a pipe. Accordingly, trenches were dug north from the pavement to the gas main line and south from the pavement to the house connection. Just off the pavement, north and south, holes were dug to enable the workmen to tunnel and force a pipe under the pavement. At 5:30 p.m., which was after the usual quitting time, the work was almost completed except for filling in the trenches and holes. Clair Reid and one or two other workmen were in the north hole and trench, and one or two others were nearby. The foreman said, apparently to no one in particular: "Run across the street and see if the fire valve is closed at the house." Reid and another workman both started across. One question is whether, at that moment, Reid was one of the class of workmen on a highway who are not compelled to direct their entire attention to

traffic because their work demands a portion of that attention.

Both appellants and respondents cite authorities for the proposition that one who is working in the street is held to a less strict watchfulness than a pedestrian crossing the street. *Lozio* v. *Perrone*, 111 N. J. L. 549, 168 A. 764; *Rust* v. *Cody*, 107 Vt. 326, 178 A. 891; *Dube* v. *Keogh Storage Co.*, 236 Mass. 488, 128 N. E. 782; *Berry* v. *Irwin*, 220 Ky. 708, 295 S. W. 1020; *Mecham* v. *Crump*, 137 Cal. App. 200, 30 P. 2d 568; *State Compensation Insurance Fund* v. *Seamell*, 73 Cal. App. 285, 238 P. 780; *Chaney* v. *Moore*, 101 W. Va. 621, 134 S. E. 204, 47 A. L. R. 800, and annotation at page 807. But this is a case where the workman was working at the side of the then traveled portion of the road and crossed the road in connection with his work but while crossing had nothing to do except get to the other side. He was free to direct his entire attention to crossing the street—just as free as any pedestrian who might have preoccupation but who is required by law to forego them while crossing a busy street.

A case very similar to the instant case is *Andrus* v. *S. J. Boudreaux & Son*, La. App. 158 So. 679. There the plaintiff was foreman of about twelve men engaged in roadwork, about half of them being on each side of the road, but not on the paved portion, as defendant's truck approached. The paymaster had just pulled up his car across the road from the plaintiff who proceeded to cross the road diagonally to the paymaster's car. The plaintiff testified he did not see defendant's truck, but the court noted a probable inference that he saw it from the fact that he had "walked unusually fast, rushed or run." But this was immaterial as the court found: "The on-coming truck was in full open view in the road and was bound to have been seen by the plaintiff had he looked down the road at the time of starting across." The court then held the plaintiff to the knowledge he would have had if he had looked and held: "It was his duty to look for his safety before starting across. He must be regarded

as having seen the truck whether he looked or not"; and the court approved the holding of the lower court that plaintiff was guilty of contributory negligence as a matter of law. "He should not have thus voluntarily, heedlessly, and thoughtlessly left a safe place and exposed himself to an obvious danger by trying to cross the road under the circumstances which attended such a movement."

The rule that one working on the highway is not held to so high a degree of care as a pedestrian has been applied to workmen crossing a street as a part of their work. *Ellis* v. *Whitmeyer*, La. App., 183 So. 77; *Riley* v. *Tsagarakis*, 50 R. I. 62, 145 A. 12; *Leoni* v. *McMillan*, 287 Ill. App. 579, 5 N. E. 2d 742. The circumstances may be such in a particular case that a workman crossing a street in the line of his work, though he be carrying nothing and doing nothing except crossing, would not be required to exercise the same degree of watchfulness as a pedestrian if barriers or signs have been placed or there is other evidence of work being prosecuted on or in the immediate vicinity of the street; but such a workman cannot be said to act as a reasonably prudent person under the circumstances if he is altogether indifferent to traffic hazards. What is due care depends on all the surrounding facts and circumstances. A workman actively laboring in the street must exercise due care. But that care must be determined from a different standpoint than the care to be exercised by a pedestrian on the same street. The former must devote some attention to the prosecution of his work; the latter is free of any duty which would interfere with keeping a vigilant lookout. A driver of a vehicle being warned by barriers, signs, or other evidences of the presence of workmen in the street must in the exercise of due care be cognizant of the fact that such workmen may not constantly attend to traffic, and his conduct should be in the light of such knowledge. He may not in case of injury to such a workman point to the latter's attention to his work as negligence on the latter's part. But a pedestrian devoting so much of his attention to

other than the traffic as the workman devotes to his work may well be guilty of contributory negligence. A workman merely crossing a street should doubtless be required to be more watchful than one sweeping streets, shoveling dirt, repairing rails, or filling holes, whose duty not only compels him to be in the highway but also to devote a very large part of his attention to his work. Thus, in *Ellis* v. *Whitmeyer*, supra, where the workman merely crossed the bridge as ordered by his foreman he looked for traffic before proceeding and left ample margin for cars traveling as warned by danger signs. Indeed, the court observed, although applying the rule of highway workers, that the plaintiff used such care as would have been absence of contributory negligence in a pedestrian. The jury's award was upheld against a claim of contributory negligence as a matter of law.

And in *Riley* v. *Tsagarakis*, supra, the Rhode Island court said [50 R. I. 62, 145 A. 14] :

"We cannot say that there was no evidence that the deceased was in the exercise of due care."

The absence of evidence as to what the workman did at the time and just prior to the impact of a truck with his body left unimpaired the presumption of due care on his part. The court reversed a judgment entered on a directed verdict for the defendant. The point is that there was no evidence of lack of due care and such lack would not be presumed.

*Leoni* v. *McMillan*, supra, was an action for the death of a workman engaged in constructing a drain under the street. He had carried a pipe across the street and had dropped it over a fence located about two feet north of the north edge of the pavement. Defendant saw deceased crossing the street. When the latter had dropped the pipe, he took one or two steps back toward the pavement and was struck. Said the court [287 Ill. App. 579, 5 N. E. 2d 745] :

"The dirt shoulder between the north edge of the highway and the fence over which Leoni dropped the heavy pipe, did not afford him

much more room, if any, than enough to straighten up after depositing the pipe and to turn around."

Judgment on a verdict of the jury for defendant was reversed.

In the instant case there is no conflict in most aspects of the testimony. There is doubt whether board marked "Wasatch Gas Company" were standing when defendant, George Owens, approached. Certainly they had been there during the day, but witness Pratt testified that he had taken down the one which would have warned the defendant, while another testified he saw the barricade after Reid was injured. It may, therefore, be assumed that the barricades were still standing and that Reid's actions were in reliance on that fact and the presence of workmen, piles of dirt, and trucks as warning to approaching automobiles. On the other hand, there had been heavy traffic during all that day, it was after quitting time, and there were no obstructions on any part of the paved portion of the street. Under these circumstances, it was testified directly, Reid stepped out of the north hole and started south across the highway in a crouched position without looking to the east for vehicles. Others testified that they did not see Reid look to the east; but no one testified, and there was no evidence that Reid looked up or down the street before starting blindly across. There was no conflict of testimony for the jury to resolve.

The actions of Reid's fellow workman, Ferguson, were in marked contrast. When the foreman asked for someone to run across the road and check the fire valve, both Reid and Ferguson started up. Ferguson saw the car and waited for it to pass, and when Reid continued he shouted "Look out," whereupon Reid turned but was unable to get back off the pavement. This is not proof that Reid proceeded without looking, but it is proof that had he looked he would have seen the car. As the court said in *Andrus* v. *S. J. Boudreaux & Son,* supra, he was chargeable with what he would have seen had he looked. He either pro-

ceeded without looking or, having seen the approaching car, he chanced crossing in face of the hazard. The latter would clearly, under the circumstances, have been negligence on his part. The approaching vehicle was at the instant of deceased's entry onto the pavement so near that no prudent person would attempt crossing in front of it. The more reasonable inference is that he did not see the car. But had he looked he would have seen it, and he is charged with knowledge of what he would have seen had he the duty to look. We think that he clearly had such duty. The order of the foreman to cross the street was not such as to relieve him of the duty of taking even the slightest care for his own safety. The presence of the barriers on the untraveled portion of the highway and of piles of dirt on the side of the pavement, and the presence of workmen, would not justify deceased in assuming that the driver of a vehicle will, because of the presence of these elements, so drive as to avoid striking one who, without looking, darts out into the path of the vehicle. We conclude that under the evidence viewed most favorably to the plaintiffs the deceased was guilty of contributory negligence as a matter of law.

2. Was it error to admit testimony of W. F. Owens' statements concerning knowledge of his son's careless driving and the providing of insurance to guard against the consequences of it? Respondents contend that this court's former opinion (92 Utah 432, 69 P. 2d 265, 266) is decisive of that question and has become the law of the case. This must be true unless the holding of our former opinion was confined to the sufficiency of the admissions to hold the father responsible for the son's negligence because of knowledge of his carelessness. It is true that the testimony quoted in that opinion included an allusion to insurance, but the court thus stated appellant's position:

"It is contended by the plaintiff that this evidence constituted not only knowledge on the part of the father of the son's habits, but that it also made out a prima facie case as to the careless habits of the son."

Admissions of the defendant were admissible to show knowledge of his son's careless driving and to make a prima facie case against him for permitting his son to drive under those circumstances. Our former opinion went no further.

Despite the general rule which excludes testimony showing liability insurance, it nevertheless may be received in evidence when an allusion to insurance is part of an admission of liability or responsibility. *Tanner* v. *Smith,* 97 Mont. 229, 240, 33 P. 2d 547; *Smith* v. *Baggett,* 218 Ala. 227, 118 So. 283; *O'Connor* v. *Sioux Falls Motor Co.,* 57 S. D. 397, 232 N. W. 904; *Herschensohn* v. *Weisman,* 80 N. H. 557, 119 A. 705, 28 A. L. R. 514; *Curcic* v. *Nelson Display Co.,* 19 Cal. App. 2d 46, 57, 64 P. 2d 1153, 1159; *Rowe* v. *Rennick,* 112 Cal. App. 576, 585, 297 P. 603; *Potter* v. *Driver,* 97 Cal. App. 311, 317, 275 P. 526; *Nichols* v. *Nelson,* 80 Cal. App. 590, 596, 252 P. 739; and annotations in 56 A. L. R. 1418, 1448; 74 A. L. R. 849, 856; 95 A. L. R. 388; 105 A. L. R. 1319, 1326. See, also, *Balle* v. *Smith,* 81 Utah 179, 192, 17 P. 2d 224.

A salutary rule obtains in New Hampshire where the court is required to decide whether the necessity of receiving the admission referring to insurance outweighs the prejudicial effect it will have. *Geery* v. *Neugebauer,* 83 N. H. 23, 136 A. 751; *McCurdy* v. *Flibotte,* 83 N. H. 143, 139 A. 367. And California has ruled that the testimony should not be received unless counsel asked the question which elicited the response relating to insurance in good faith and not for the purpose of prejudicing the jury. *Langford* v. *Kosterlitz,* 107 Cal. App. 175, 185, 290 P. 80. Arizona requires counsel to take precautions against references to insurance which are not properly admissible. *Consolidated Motors, Inc.,* v. *Ketchum,* 49 Ariz. 295, 66 P. 2d 246.

These rules are all wise precautionary measures to prevent the introduction in evidence of immaterial and irrelevant but highly prejudicial adversions to liability insurance. But in the case at bar the statements were material to an

issue in the case which was proved (and perhaps provable) only by the admissions of defendant W. F. Owens. Under the decisions of this court the family doctrine of automobile negligence liability is not adhered to in Utah (*McFarlane* v. *Winters*, 47 Utah 598, 155 P. 437, L. R. A. 1916D, 618) ; and this defendant was liable for the negligence of his son only if he permitted the son to drive knowing him to be an unsafe or careless driver. Testimony of his admissions in the home of the deceased's parents supplied this element. In response to counsel's question as to the conversation on the day of the funeral, the deceased's widow testified:

> "Q. Now will you state what Mr. Owens said? A. Mr. Owens said, 'My boy is careless, and he drives too fast and it worries us.' He said, 'We have taken out insurance to protect him,' and he says, 'If you won't prosecute * * * our boy, we will do all we can to help you get that $5,000 insurance.'"

To hold it reversible error to permit allusions to insurance, though such allusions are in themselves admissions, would be to reject otherwise competent testimony, material to the issue—indeed, perhaps the only material evidence on a vital issue—on the assumption that the jury would disregard its plain duty and resolve the question of defendant's liability, not on the evidence relative to his wrong, but on that respecting who would ultimately have to pay.

Though the suggested assumption should not be indulged, yet we would be closing our eyes to a fact well known to trial courts and trial lawyers were we to assert that the probability of any jury being influenced in determining the question of liability and the question of the amount of recovery by the fact that an insurance company would pay the damages assessed, is so remote as not to challenge judicial notice. Certainly if the evidence relative to insurance is irrelevant to the issues before the court it should be rejected, and the fact of the existence of insurance is itself irrelevant. If questions are propounded to a witness for

the obvious purpose of revealing such irrelevant fact to the jury, a mistrial may properly be declared or a new trial granted. Though reference to insurance be made in connection with an admission of liability, unless the reference to insurance is itself freighted with admission, counsel should be required to so elicit the testimony as to preclude revelation of the irrelevant fact. But here the allusion to insurance was so freighted. The very statement as to the existence of insurance, as testified to by plaintiffs' witnesses, reveals on the part of the father such definite knowledge on his part of his son's carelessness as to induce him to take out insurance to protect against its consequences. The mere fact that insurance to protect against the consequences of negligence was carried by one charged with such consequences would be no evidence of negligent propensities. Indeed, one who carries insurance to protect others against the economic effects of a possible invasion by him of their rights might reasonably be assumed to be one who would take precaution to avoid such invasion. But here, the statement was so interwoven with that relating to the father's knowledge as to definitely weight the latter. Fraught with prejudice though this be, it constituted an admission by defendant which, if believed, would make a prima facie case of liability against him.

3. Was it error for the district court to refuse defendants' requested instruction number 21 that the jury should regard testimony of partisan witnesses concerning supposed admissions of liability by a defendant "with great suspicion"? In the opinion in this case on former appeal, 92 Utah 432, 438, 69 P. 2d 265, 268, the concurring opinion of Mr. Chief Justice Folland, in which Mr. Justice Moffat concurred, stated that although the court was committed to the doctrine that admissions of a defendant could constitute a prima facie case against him, "the defendant would, on request, be entitled to an instruction to the jury that such testimony be regarded with caution. 22 C. J. 291." Accordingly defendants on the trial here appealed from requested such an instruction, supplanting "with caution" by the phrase "with

great suspicion." Only two of the then members of this court approved the statement quoted, and it is therefore neither the law of this court nor the law of the case by virtue of that pronouncement. It is of considerable importance, however, in view of our approval herein of the rule permitting evidence of admissions of a party to include allusions to insurance when clearly a part of the admissions.

Appellant has referred to no authorities whatever, except the concurring opinion of this case on former appeal, to support his contention that the giving of such an instruction would be proper. Respondent contends the instruction was properly refused, first because it invaded the province of the jury, and second because even if a charge on the subject be correct the one requested was not one which the court could give.

Did the requested charge invade the province of the jury? Under numerous authorities it is error to charge the jury that testimony of oral admissions by a party to the case shall be received with caution. *Hirshfeld* v. *Dana*, 193 Cal. 142, 223 P. 451; *People* v. *Wardrip*, 141 Cal. 229, 74 P. 744; *Knowles* v. *Nixon*, 17 Mont. 473, 43 P. 628; *Moore* v. *Dickinson*, 39 S. C. 441, 17 S. E. 998; *Reitemeier* v. *Linard*, 90 Ind. App. 363, 150 N. E. 797; Bancroft's Code Practice and Remedies, Sec. 1501. On the other hand, there is ample authority sustaining the rule that the jury may properly be instructed to receive with caution testimony of oral admissions. *Hoge* v. *George*, 27 Wyo. 423, 444, 200 P. 96, 18 A. L. R. 469; *Grotjan* v. *Rice*, 124 Wis. 253, 102 N. W. 551; *Cawley* v. *People's Gas & Electric Co.*, 193 Iowa 536, 187 N. W. 591; *Davis* v. *City of Dubuque*, 209 Iowa 1324, 230 N. W. 421; *Gangi* v. *Fradus*, 227 N. Y. 452, 125 N. E. 677; *Linderoth* v. *Kieffer*, 162 Minn. 440, 203 N. W. 415; *Blume* v. *Chicago, M. & St. P. Ry. Co.*, 133 Minn. 348, 158 N. W. 418, Ann. Cas. 1918D, 297; *Chrestenson* v. *Harms*, 38 S. D. 360, 161 N. W. 343. Other states, by statute or constitutional amendment, have imposed on judges the duty of instructing juries to receive cautiously the testimony of oral admissions.

Oregon: Lord's Oregon Laws, Sec. 868; *Thompson* v. *Purdy,* 45 Or. 197, 77 P. 113, 83 P. 139; *Gleason* v. *Denson,* 65 Or. 199, 132 P. 530; Georgia: Park's Ann. Code of Georgia, 1914, Sec. 5784; *McBride* v. *Georgia Ry. & Electric Co.,* 125 Ga. 515, 54 S. E. 674; *Elliott* v. *Marshall,* 179 Ga. 639, 176 S. E. 770; *La Hatte* v. *Walton,* 53 Ga. App. 6, 184 S. E. 742; *Pitts* v. *Rape,* 25 Ga. App. 722, 104 S. E. 643; California: 1934 Amendment to Constitution, Art. 6, Sec. 19; *People* v. *Gosden,* 6 Cal. 2d 14, 56 P. 2d 211. Both views are noted and cases listed in 64 C. J. 578.

There can be no doubt that testimony of oral admissions is easy of fabrication and is so susceptible of error in recollection or statement as to be apt to result in serious error. Having come from the very party to be judged, it is, if believed, given very high probative value by the jury. For these reasons some courts instruct juries to receive such testimony with caution. Yet if the making of the admission was deliberate and is transmitted to the jury accurately, the evidence should be as binding, or almost, as an admission made in open court. Many courts have discussed this combination of potential frailty and strength in such testimony and have instructed that the evidence should be received cautiously, but if received by the jury it is entitled to full credence. Thus New York in *Gangi* v. *Fradus,* supra, 227 N. Y. at pages 456-458, 125 N. E. at page 679, said of oral admissions testimony:

"They have two phases for the jury's consideration: The one, were they made; the other, their effect. * * * In case they were made understandingly and deliberately, are of pure fact within the knowledge of the declarant, and were made under conditions and circumstances conducive to veracity, and are not overborne by the other facts in evidence, they may, in reason and sound judgment, establish a cause of action or a defense. * * * The trial justice may not instruct as to the rank assignable to them or the influence to be yielded by them.

"* * * The making of an admission of strong effect may have in support only faint and dubious evidence, without justifying the declaration that admissions are a weak or dangerous kind of evidence. The weakness or danger is, in such case, in the proof of the making

and not in the contents of the admission. Instructions of scrutiny and caution, as the evidence warrants, in accepting the admissions as made, may well be given. To remember and narrate accurately the statements of another is difficult. The narrator may be thoroughly honest in his belief that he has given the exact words of the admission, and be mistaken. Transposition of a word or words in the narration may give a meaning other than the real. A listener is liable to misunderstand or forget what was really said or intended by the declarant, or to incorrectly relate it. A word, or a look, misunderstood, may produce upon his mind a meaning different from that which the declarant intended to convey. The declarant may not have expressed his meaning. Admissions are easily fabricated or imagined. Differing conditions may require or should receive from the jury varying degrees of scrutiny, analysis, and caution. It is entirely proper for the trial justice, if the evidence permits, to bring to the attention of the jury the considerations stated, or others of similar character, as reasons for caution and a careful and zealous scrutiny the evidence of the making. They are such as to impress any man of common sense. We repeat, it is, however, for the jury to determine whether or not the admissions were made, the facts and conditions which affect the probative value, and the value itself."

Iowa has adopted, by judicial rule, an instruction on extra-judicial, oral admissions based on Section 200 of Greenleaf on Evidence. *Davis* v. *City of Dubuque,* supra; *Duncan* v. *Rhomberg,* 212 Iowa 389, 236 N. W. 638; *Cawley* v. *People's Gas & Electric Co.,* supra. So also have South Carolina and South Dakota. *Moore* v. *Dickinson,* supra; *Chrestenson* v. *Harms,* supra. Iowa holds, with good reason, that where the jury is instructed to receive such testimony with caution the court must go on and instruct the jury that such evidence, if accepted, may be very strong. The question is thoroughly discussed in *Davis* v. *City* of Dubuque where the court found this instruction erroneous [209 Iowa 1324, 230 N. W. 424] :

"You are instructed that evidence has been admitted before you that plaintiff made certain declarations and statements. Verbal statements or admissions should be received by you with caution as they are subject to much imperfection and mistake owing to the person speaking not having clearly expressed his own meaning or the person spoken to not having thoroughly understood the speaker, but when

verbal statements are established to your satisfaction they should be taken by you, together with all the other evidence in the case, and given such weight and credit as you believe they are entitled to receive."

The court quoted approvingly an instruction from an earlier case, *Martin* v. *Town of Algona,* 40 Iowa 390, which went beyond the erroneous instruction and showed that the caution is addressed only to receiving the declaration, not to giving it weight after its accuracy has been determined, as follows:

"The court directed the jury that such evidence, 'consisting of the mere repetition of oral statements, and being therefore subject to much imperfection and mistake, through misunderstanding, excitement, or impulse of the party, and want of proper understanding of the words by the hearers and their imperfection of memory, should be cautiously received; but when such admissions are deliberately made, or often repeated, and are correctly given, they are often the most satisfactory evidence; that the jury should consider all the circumstances under which such admissions were made and introduced in evidence, and give them such weight as they were justly entitled to receive.'"

This same approach is indicated in *Chrestenson* v. *Harms,* supra, where the dispute was as to whether defendant had ever had a conversation with the witness and the court held that under those facts the jury should receive the testimony of the admission with caution. Section 200 of Greenleaf was quoted approvingly but it is not plain whether the rule there laid down must be followed.

Minnesota also holds that "caution" may properly be instructed only where the making of the admission is in question and that disparaging the character of the testimony is erroneous. *Linderoth* v. *Kieffer,* supra; *Blume* v. *Chicago, M. & St. P. Ry.,* supra.

In the case at bar defendants requested, and the court refused, the following portion of instruction number 21:

"You are instructed that it is the well-founded policy of the law to view with great suspicion the testimony of partisan witnesses concerning which it is hoped to fix liability on a party to a law suit. You are, therefore, instructed to scrutinize with the utmost care, and you are entitled to view with suspicion the testimony of the three witnesses mentioned concerning the admissions supposed to have been made by the defendant, W. F. Owens."

This instruction disparages the character of the testimony and is not directed solely to determining whether the admission was made and has been recalled and narrated correctly. An instruction to "scrutinize with care" might be held to relate to the question whether the witnesses reported correctly; but to go on and add that they "are entitled to view with suspicion the testimony" is instructing with reference to the admissions themselves and not merely the remembering and narrating. This is error under the well-reasoned decisions cited above.

But the instruction was properly refused even if it be assumed that a cautionary instruction would have been proper. In only one case we have been able to find was the adjective "great" used in conjunction with "caution." That was in *Cawley* v. *People's Gas & Electric Co.*, supra, but the Iowa court requires balancing of its cautionary instructions and this case does not, therefore, approve the use of "great caution" without such counterbalance.

But the word "suspicion" is proper under no cases we have been able to find. It casts doubt upon the type of testimony and is therefore not a "cautionary instruction" but an instruction as to the weight of that kind of evidence. In the absence of a statute such an instruction would be erroneous. In *People* v. *Sternberg*, 111 Cal. 11, 43 P. 201, 202, it was held that under a statute authorizing instructions to view evidence "with caution" it was error to instruct the jury to view it "with distrust." The court said:

"The distinction between caution and distrust is broad enough to justify the court's refusal."

.We see but little difference in "suspicion" and "distrust." It was not error to refuse the requested instruction.

The contention of defendant set out in assignment 4, supra, to the effect that this action cannot be maintained by the children of deceased after the surviving wife, mother of the children, has received compensation from the Industrial commission, is without merit. This court in *Robinson* v. *Union Pacific R. Co.,* 70 Utah 441, 261 P. 9, ■ held that under Compiled Laws 1917, Sec. 3133, as amended, compensation is not the exclusive remedy in case of injury or death, caused by another not in the same employment except where an employee or his dependents assign his or their cause of action to the insurer liable for compensation. Subsequently in *Brainard's Cottonwood Dairy* v. *Industrial Commission,* 80 Utah 159, 14 P. 2d 212, 88 A. L. R. 659, it was contended by plaintiff that where an employee is killed in the course of his employment by another not in the same employment, no dependent is entitled to compensation as against the employer or his insurance carrier, unless all of the dependents having a cause of action against the person responsible for the death of the employee join in the assignment of such cause of action to the employer and his insurance carrier. This court rejected such contention and held a widow who assigned such cause of action to the employer and insurance carrier was not also required in order to receive compensation under the Workman's Compensation Act to procure assignment from a minor child who sued those responsible for the father's death. The former of these two cases recognizes a right of election in the dependent or dependents. The latter establishes the right of one dependent to receive compensation upon assigning her or his cause of action without procuring the assignment of the other dependents. Their interest in that cause of action unassigned, remains in them. They may, therefore, proceed to prosecute it. Plaintiff in his brief objects to such construction on the ground that it "extends the possibility of a double recovery in every industrial accident caused by a third

party where a widow and minors are left surviving." The obvious answer to such objection is that such result should not concern the negligent third party. The so-called double recovery adds not one particle to his burden. He must respond in damages for the full value of the life of the deceased. It does not concern him that he must pay to the assignee of the dependents rather than to the dependents themselves. The trial court correctly ruled that the action was maintainable by the plaintiffs.

The judgment of the lower court must be reversed on its refusal to find the plaintiff guilty of contributory negligence as a matter of law. The cause is remanded to such court with instructions to grant a new trial. Costs to appellants.

MOFFAT, C. J., PRATT, J., and H. D. HAYES, District Judge, concur.

LARSON, J., dissents.

WOLFE, J., being disqualified, did not participate herein.